IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

Michael Widmer

Plaintiff/Petitioner(s),

-vs-

Page, Bebout, Harrington, Jones, Butler, Bramlett, Nurse Jane Doe, Nurse Jane Doe 2, Nurse Jane Doe 3, Medical Director, Medical Doctor, Mailroom employees, Sgt. John Doe and chaplain.

Defendant/Respondent(s).

Docket No. 13-663-MJR
(To be supplied by the Clerk)

[X] **CIVIL RIGHTS COMPLAINT** pursuant to 42 U.S.C. §1983 (State Prisoner)

[ ] **CIVIL RIGHTS COMPLAINT** pursuant to 28 U.S.C. §1331 (Federal Prisoner)

[ ] **CIVIL COMPLAINT** pursuant to the Federal Tort Claims Act, 28 U.S.C. §1346, 2671-2680

## I. JURISDICTION

A. Plaintiff's mailing address and/or register number and present place of confinement.

Michael Widmer B30985, Menard Correctional Center, PO Box 1000, Chester Illinois 62259

B. Defendant __Page__ is employed as
(Name of First Defendant)
__Corrections Lieutenant__
(Position/Title)
with __Illinois Department Of Corrections / @ Menard,__
(Employer's Name and Address)
__PO 1000, Chester IL 62259__

At the time the claim(s) alleged in this complaint arose, was the defendant employed by the state, local or federal government? Yes [X] No ( )

If your answer is "yes", briefly explain: __State Government Agency - IDOC__

C. Defendant __Harrington__ is employed as
(Name of Second Defendant)
__Warden__
(Position/Title)
with __Illinois Department Of Corrections, Menard__
(Employer's Name and Address)
__PO 1000 Chester Illinois, 62259__

At the time the claim(s) alleged in this complaint arose, was the defendant employed by the state, local or federal government?

Yes (X)   No ( )

If your answer is "yes", briefly explain:
__State Government Agency - IDOC__

D. Using the outline of the form provided, include the above information for any additional defendant(s).
All remaining defendants, Jones, Butler, Bramlett, and Sgt. John Doe, mailroom employees whose names are unknown, are all Chaplain, state govt employees of IDOC at Menard Correctional Center, PO 1000 Chester IL 62259. Defendants Nurses Jane Doe's #1, #2 & #3, medical director, and medical doctor are also IDOC employees at Menard Correctional Center, PO 1000 Chester IL 62259 as well as employees of Wexford Health Care Service and are employees of state government - IDOC. Bramlett is the librarian.

## II. PREVIOUS LAWSUITS

A. Have you begun any other lawsuits in state or federal court relating to your imprisonment?

Yes (X)   No ( )

B. If your answer to "A" is "yes", describe the lawsuit(s) in the space below. (If there is more than one (1) lawsuit, you must describe the additional lawsuits on another sheet of paper, using the same outline.) **Failure to comply with this provision may result in summary denial of your complaint.**
I had 1 case dismissed in 2000, docket 3:98 CV 305 in Southern District because I couldn't file an answer to an answere. As of this date I have 6 pending complaints in Southern District Against IDOC, which were filed this year and counsel has been appointed in all except one recently filed. The cases are as follows: 12 CV 1261 Widmer vs Martin, Widmer vs Bayler 13 CV 23, Widmer vs Shehorn 13 CV 24, Widmer vs Hodge + Lingle 13 CV 25 and Widmer vs Hodge + Vaughn 13 CV 417. I have NO STRIKES.

-2-

1. Parties to previous lawsuits:
   Plaintiff(s) _(See previous case listing)_

   Defendant(s) _____

2. Court (if Federal Court, name the District; if State Court, name the County) _____

3. Docket number _____

4. Name of Judge to whom case was assigned _____

5. Type of case (for example: Was it a Habeas Corpus or Civil Rights action?) _____

6. Disposition of case (for example: Was the case dismissed? Was it appealed? Is it still pending?) _____

7. Approximate date of filing lawsuit _____

8. Approximate date of disposition _____

### III. GRIEVANCE PROCEDURE

A. Is there a prisoner grievance procedure in the institution? __I'm told their is__

B. Did you present the facts relating to your complaint in the prisoner grievance procedure?
   Yes (X) No ( )

C. If your answer is "yes",
   1. What steps did you take? __I filed 3 detailed grievances under the EMERGENCY GRIEVANCE PROVISION. The 1st on 6-19-13, 2nd on 6-24-13 and 3rd on 6-25-13.__

   2. What was the result? __No response whatsoever or any action taken to investigate or correct my complaints.__

D. If your answer is "no", explain why not. __—__

E. If there is no prisoner grievance procedure in the institution, did you complaint to prison authorities? Yes (X)   No ( )

F. If your answer is "yes",
1. What steps did you take? I authored detailed letters to defendants Harrison, Jones, Better, Bramlett, medical director and mailroom supervisor requesting relief but received no answer, response or relief.

2. What was the result? I received no answer, response or relief from any of these defendants for 8 days, until time of filing instant complaint.

G. If your answer is "no", explain why not. _____

H. Attach copies of your request for an administrative remedy and the response(s) you received. If you cannot do so, explain why not: I received NONE. 13 days and no response to EMERGENCY GRIEVANCE FOR MEDICAL CARE IS TO LONG, IF I EVEN GET A RESPONSE.

IV. **STATEMENT OF CLAIM**   Count 1 Cruel + Unusal Punishment + Denial of Medical Treatment

State here, as briefly as possible, the FACTS of your case. State who, what, when, where and how you feel your constitutional rights were violated. Do not cite cases or statutes. If you choose to submit legal arguments or citations, you must do so in a separate memorandum of law. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. If your claims relate to prison disciplinary proceedings, **attach copies of the disciplinary charges and any disciplinary hearing summary as exhibits.**

**Only two (2) extra pages (8½ x 11") are permitted, if necessary, to complete your statement of claim.** Additionally, attach any relevant, supporting documentation.

1) On 6-19-13, I transfered to Menard Correctional Center.
2) Upon exiting the bus at Menard, I was told by defendant Behart that he was going to remove my waist chain and cuff me behind my back.
3) I informed defendant Behart that I was injured and had a current medical special needs permit for low bunk, low gallery and waist chain issued in IDOC on 4-27-13, with no expiration. (See exhibit A)
4) Defendant Behart notified defendant Page, who was standing close by.
5) Defendant Page approached me within inches of my face and screamed into my ear, "YOUR IN MENARD NOW AND I DON'T GIVE A FUCK WHAT KIND OF PERMIT YOU HAVE".
6) I told defendants Page and Behart again that it caused me severe pain to force my left arm behind my back and I was in physical therapy.
7) Defendant Page then ordered defendant Behart to place my hands

- 4 -

behind my back and cuff me.
8) Defendant Bebout forcefully pulled my arms behind my back and cuffed me as I cried out in pain for him to stop.
9) I remained cuffed behind my back and forced to walk bent over for approximately 45 minutes.
10) After being cuffed behind my back, I was escorted to a table where defendants Nurse Jane Doe 1, Nurse Jane Doe 2 and Nurse Jane Doe 3 were doing intake screening.
11) I informed all these Nurse Jane Does of my special medical needs permits and fact I was in great pain, but was ignored by all 3 defendants.
12) Upon being strip searched by defendant Bebout, I was ordered to hand out all my clothing and eye glasses.
13) Upon being given my eye glasses back they were broken. (Arm broke off)
14) Defendant Bebout confiscated my glasses from me, then escorted me to cell No. 4-51. (See exhibit B)
15) I ran into the wall two times with my head on the way to the cell due to being bent over in pain and without my glasses.
16) I got a knot on my head and a headache from hitting the wall.
17) I asked to see a med tech or nurse and was denied by defendant Bebout.
18) I sent immediate requests for medical treatment explaining in detail what took place upon arrival the same date to defendants Herrington, Jones, Butler, medical director and filed an EMERGENCY GRIEVANCE.
19) On 6-22-13, I again sent letters to defendants Herrington, Jones, Butler and medical director seeking medical treatment.
20) I also asked several security staff for medical treatment, but quickly learned, when you are behind the steel door in seg at Menard, you will not get staff to answer or assist you at all.
21) On 6-27-13, I was seen by an eye doctor who ordered me new eye glasses and made me sign a money voucher for 48.00 even though staff broke my glasses. (Exhibit H)
22) I have not been seen by any other medical staff at all as of date of filing this complaint on July 1st, 2013.
23) Defendant Medical Doctor was in my unit on 6-30-13 doing a call line. I was in legal exchange a few feet from him and told him I was in extreme pain and requested medical treatment. He told me he didn't have time to examine me and to put in another request.
24) Illinois State Law 20 Il. Admin. Code, CH I, sec 504, Sub ch(e) 4, states "MEDICAL PERSONNEL SHALL VISIT THE SEGREGATION UNIT DAILY TO SCREEN REQUESTS FOR MEDICAL ATTENTION, AND A PHYSICIAN SHALL VISIT THE UNIT ON A WEEKLY BASIS" (See exhibit C)
25) I assert that defendants Bebout, Jane Doe 1, Jane Doe 2, Jane Doe 3, medical director, Herrington, Jones and Medical doctor have denied and continue to deny me any medical treatment whatsoever.
26) I assert defendants Bebout and Page maliciously and intentionally injured me further in violation of my right to be free from cruel and unusual punishment.
27) I am unable to sleep, eat or lay down daily due to my pain.

## Count II Mail Obstruction

28) On 6-24-13, I was taken on a court writ to Ford County.

29) I was told by my friend that he mailed me 2 letters on 6-19-13 to Menard.

30) I have received only legal mail since arriving at Menard, all of which has been opened outside of my presence by defendant mailroom staff. (see exhibits D, E, F + G)

31) On 6-25-13 I received legal mail from IL Atty General Lisa Madigan already opened outside my presence.

32) On 6-26-13, I received legal mail from Judge Steve Pacey already opened outside my presence.

33) On 6-27-13 I received legal mail from Peoples Uptown Law Center opened outside of my presence.

34) On 6-28-13 I received legal mail from atty Mike Zopf opened outside of my presence.

35) I assert defendant mailroom employees are intentionally obstructing, holding or discarding my US Mail as well as obstructing and reading my clearly marked privileged legal mail outside of my presence. I seek injunctive relief to enjoin defendant mailroom employees from obstructing + opening my legal mail.

## COUNT III Violation Of 1st Amendment

36) My religion identified on the IDOC OTS is African Hebrew Ismaelite.

37) A tenant of my religion is to receive a Kosher Diet.

38) Upon arriving at Menard Correctional Center on 6-19-13, I requested a Kosher tray from the Sgt John Doe.

39) I was denied my Kosher diet by Sgt John Doe 6-19-13.

40) I submitted written request to defendants Herrington, Jones and Butler for a Kosher Diet.

41) On 6-21-13 I asked defendant chaplain in person to please put me on the Kosher list.

42) I submitted a 2nd Kosher diet request on 6-22-13.

43) I have been denied a Kosher Diet since 6-19-13 by defendants Herrington, Butler and chaplain.

44) As a result of defendants Herrington, Butler and chaplain denying me said Kosher diet for past 12 days thus far, I have lost weight, suffered stomach cramps and head aches.

45) I request to be given an evidentuary hearing as soon as possible for injunctive relief to enjoin the defendants from continuing their course of conduct of obstructing my mail and legal mail, denying my religous diet, denying me medical treatment and willfully injuring me, as described in the aforesaid complaint.

46) All times and dates of incidents alleged in this complaint, all defendants were acting under the color of state law and I was in the control and custody of defendants at all said times and dates alleged herein.

47) Defendant Bramlett is refusing to provide me legal services + materials.

## V. REQUEST FOR RELIEF

State exactly what you want the Court to do for you. If you are a state or federal prisoner, and seek relief which affects the fact or duration of your imprisonment (for example: illegal detention, restoration of good time, expungement of records or parole release), you must file your claim on a Habeas Corpus form, pursuant to 28 U.S.C. §2254, 28 U.S.C. §2255, or 28 U.S.C. §2241.

48) I sue all defendants in their individual and official capacities. I seek a declaratory order, compensatory and punitive damages as well as injunctive relief as soon as hearing can be set. I ask for $100,000 in punitive damages from defendant Page. I sue all other defendant individually and collectively for $50,000 each and any other relief this court deems just and proper.

## VI. JURY DEMAND (check one box below)

The plaintiff does ☐   does not ☒   request a trial by jury. (See Fed.R.Civ.P. 38.)

## DECLARATION UNDER FEDERAL RULE OF CIVIL PROCEDURE 11

I, the undersigned, certify to the best of my knowledge, information, and belief, that this complaint is in full compliance with Rule 11(a) and 11(b) of the Federal Rules of Civil Procedure. The undersigned also recognizes that failure to comply with Rule 11(a) and (b) may result in sanctions, monetary or non-monetary, pursuant to Federal Rule of Civil Procedure 11(c).

The plaintiff hereby requests the Court issue all appropriate service and/or notices to the defendant(s).

Signed this 2nd day of July, 2013.

_Michael L Widmer_
Signature of Plaintiff

_N/A_
Signature of attorney, if any

Exhibit A

**Illinois Department of Corrections**
**MEDICAL PERMIT**
**Lawrence Correctional Center**

Offender Name: Widmer Michael     Offender Number: B30985
Housing Unit: 8CU12

| ☒ New Order | ☐ Renewal |
|---|---|
| ☐ Change | ☐ Cancel |

☒ Low Bunk - Per Physician Orders the above named inmate is to have
☒ Low Gallery - a low bunk/low gallery due to his medical conditions.
See start Date below:

| ☐ Medical | ☐ ADA | ☐ State Boots |
|---|---|---|
| ☐ Cane | | ☐ Special Shoes: _____ |
| ☐ Orthopedic | | |
| ☐ Crutches | | ☐ Contacts |
| ☐ Other: | | |
| ☐ Walker | | ☐ Fan |
| ☐ Slow Walk | | ☐ C-PAP Machine |
| ☐ Hearing Aid(s) | | ☐ No Gym/Yard |
| ☐ Wheel Chair | | ☐ Medical Lay-In |
| ☐ Other ADA: | | ☒ Other: Waist chains |

Start Date: 4/27/13     Expiration Date: Indefinate

Authorized By:

MD: _____ Date: 4/27/13

PA: _____ Date: _____

Distribution: Inmate
  Medical Records
    ☐ Clothing
    ☐ Personal Property
    ☐ Placement

*Printed on Recycled Paper*

LAW 0356 (Rev 10/2009)

Exhibit C
page 1

## 20 ILLINOIS ADMINISTRATIVE CODE    CH. I, SEC. 504
### SUBCHAPTER e

    1) A shower and shave no less than once per week.

    2) State issued toilet tissue, soap, towel, toothbrush, and toothpaste for daily use if the offender has insufficient commissary funds to purchase these items.

    3) A weekly exchange of clean institutional clothes or availability of laundry services at least weekly.

    4) False teeth, eye glasses, and other essential items of personal hygiene and health shall be permitted unless they are a threat to safety or security.

h) Offenders in segregation status shall be permitted personal property as approved by the Chief Administrative Officer except for property prohibited by 20 Ill. Adm. Code 535.

i) Commissary privileges comparable to those applicable to the general population shall be allowed, according to grade (Section 504.130), except for restrictions on certain items which may be ordered by the Chief Administrative Officer for safety and security reasons or for other legitimate penological reasons.

j) Persons in segregation status shall receive nutritionally adequate food.

k) Visits shall be permitted in accordance with 20 Ill. Adm. Code 525.Subpart A.

l) Medical personnel shall visit the segregation unit daily to screen requests for medical attention, and a physician shall visit the unit on a weekly basis.

m) A chaplain designated by the Chief Administrative Officer shall visit the segregation area on a daily basis when a chaplain is present on institutional grounds, when possible, but not less than once a week.

n) Each offender in segregation status shall be contacted by a correctional counselor at least once every 30 days.

o) Continued involvement in programs may be permitted on an individual basis on approval of the Chief Administrative Officer.

p) Offenders shall be afforded the opportunity for exercise outside their cells in accordance with Section 504.670.

q) Offenders who are not in "C" grade shall be permitted to make one collect telephone call per month for a period of no more than 15 minutes.

Exhibit C
Page 2

**20 ILLINOIS ADMINISTRATIVE CODE    CH. I, SEC. 504**
**SUBCHAPTER e**

    r)      Offenders in segregation status shall have the same mail privileges as those provided for persons in the general population (20 Ill. Adm. Code 525.Subpart B).

    s)      Offenders in segregation status shall be permitted reading materials and shall have access to materials from the facility library and legal library. Physical access to the library need not be provided.

    t)      Any equipment, personal property, or material provided or allowed in the cell of an offender in segregation status, in accordance with this Subpart, may be removed or restricted as approved by the Chief Administrative Officer if the offender destroys, damages, or abuses it in a manner that jeopardizes the safety of any person or the facility or disrupts institutional safety or order.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

### Section 504.630 Investigative Confinement

Offenders placed in confinement pending completion of an investigation shall be provided with the same conditions and services as those required for the segregation area.

(Source: Amended at 27 Ill. Reg. 6214, effective May 1, 2003)

### Section 504.640 Confinement Pending Transfer (Repealed)

[Formatted]

(Source: Repealed at 12 Ill. Reg. 8351, effective June 1, 1988)

### Section 504.650 Confinement in Control Segregation (Repealed)

[Formatted]

(Source: Repealed at 22 Ill. Reg. 1206, effective January 1, 1998)

### Section 504.660 Administrative Detention

Administrative detention is a nondisciplinary status of confinement which removes an offender from general population or restricts the individual's access to general population.

    a)      The Chief Administrative Officer may, with the approval of the Director, Deputy Director, or Assistant Deputy Director, place an offender in administrative detention for up to 90 days.

    b)      In determining whether to place an offender in administrative detention, the Chief Administrative Officer may consider, among other matters:

        1)      The seriousness of the offense;

        2)      The safety and security of the facility or any person;